**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **BLAKE EDWARD HASTY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:23-cv-00114** |
| **v.** | § | |
| | § | |
| **FLAGSTAR BANK, NATIONAL** | § | |
| **ASSOCIATION, and FAY SERVICING, LLC,** | § | |
| **its/their successors and/or assigns,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Blake Edward Hasty, hereinafter called Plaintiff, and pursuant to FRCP 15(a)(1)(B) hereby files this his Amended Complaint, complaining of and about Flagstar Bank, National Association, and Fay Servicing, LLC, its/their successors and/or assigns, as Defendants, and for his claims and causes of action set forth herein below, respectfully shows unto the Court the following:

### I.

### REMOVAL OF STATE COURT ACTION

1.     Plaintiff originally filed his Plaintiff's Original Verified Petition for Trespass to Try Title, etc., on March 9, 2023, under Cause No. 121929-CV, in the 239th Judicial District Court of Brazoria County, Texas ("State Court action"), which was then removed to this Court on April 18, 2023, by Notice of Removal [Dkt. 1] filed by Defendant Flagstar Bank.

## II.

## PARTIES AND SERVICE

2.      Plaintiff, Blake Edward Hasty ("Plaintiff"), is an individual whose present address is 17312 N. Wayne Lane, Pearland, Texas 77584, which real property is made the subject of this civil action. Plaintiff was the former record fee simple title owner of the subject property and the borrower or obligor under the mortgage loan secured by the subject property which are each made the subject of this civil action.

3.      Defendant, Flagstar Bank, National Association ("Flagstar")[1], is a national banking association doing business in the State of Texas as a mortgage lender, and purports to be the current owner of the subject real property through a putative non-judicial foreclosure sale, as well as the current owner and holder, or mortgagee, of Plaintiff's mortgage loan made the subject of this civil action. Defendant Flagstar was served with citation in the State Court action and has recently filed its Motion to Dismiss under FRCP Rule 12(b)(6) [Dkt. 4] on April 19, 2023.

4.      Defendant, Fay Servicing, LLC ("Fay"), is a foreign limited liability company doing business sin the State of Texas as a mortgage loan servicer, and Defendant Fay recently served notice upon Plaintiff to vacate the real property made the subject of this suit, and its putative interest in the subject property upon which such notice to vacate is based upon is unknown to Plaintiff, and may be served with summons by serving its registered agent, Registered Agent Solutions, Inc., Corporate Center One, 5301 Southwest Parkway, Suite 400, Austin, Texas 78735.

---

[1] At the time of filing of the State Court action, Defendant Flagstar was erroneously named as Flagstar Bank, F.S.B.

## III.

## JURISDICTION AND VENUE

5.      The subject matter in controversy is within the jurisdictional limits of this court.

6.      Plaintiff seeks:

   a.      monetary relief of more than $75,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees.

7.      This court has subject matter jurisdiction herein because each of the Defendants are non-residents of Texas who have removed and/or consented to removal of this civil action pursuant to 28 U.S.C. §1441, and because the amount in controversy exceeds $75,000, exclusive of interest and costs, and further because one or more of Plaintiff's claims for relief are based upon questions of Federal law.

8.      Venue is proper in the United States District Court for the Southern District of Texas-Galveston Division, because Plaintiff resides in this Federal District, and because the real property and improvements made the subject of this Amended Complaint are located entirely within this Federal District.

## IV.

## FACTUAL ALLEGATIONS

9.      On September 23, 2011, Plaintiff purchased the real property and improvements commonly known as 17312 N. Wayne Lane, Pearland, Texas 77584, and legally described to wit:

**FIELD NOTE DESCRIPTION OF A 1.7282 ACRE TRACT OF LAND OUT OF A 6.7310 ACRE TRACT OUT OF LOT 18 OF THE ALLISON RICHEY GULF COAST HOME COMPANY SUBDIVISION OF SECTION 25, H.T. 7 B.R.R. CO. SURVEY, ABSTRACT 245. BRAZORIA COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:**

**BEGINNING at a point for corner in the centerline of County Road 876-b (also known as Wayne Road) (60' R.O.W), which bears SOUTH, a distance of 60.00 feet from the northeast corner of the aforementioned Lot 18;**

**THENCE SOUTH, along the centerline of County Road 876-B and the east line of said Lot 18, a distance of 158.70 feet to a point for corner;**

**THENCE N 69°57'45" W, at a distance of 30,00 feet pass ½ inch Iron rod with cap set for reference corner in the west right of way line of County Road 878-B, continuing in all a total distance of 474.34 feet to ½ inch iron rod with cap set for corner;**

**THENCE NORTH, a distance of 158.70 feet ½ inch iron rod with cap set for corner;**

**THENCE S 89°57' 48" E, at a distance of 444.34 feet pass a ½ inch iron rod with cap set for reference corner in the west right of way line County Road 876-B, continuing in all a total distance f 474.34.34 feet to the PLACE OF BEGGING and containing 1.7232 acres of land, more or less.** ("Property");

which is the Plaintiff's homestead property. At all relevant and material times hereto, Plaintiff was the fee simple owner of the subject Property. A true and correct copy of the General Warranty Deed With Vendor's Lien to evidence Plaintiff's fee simple title and ownership of the subject property and recorded as Document No. 2011039662 of the official real property records of the Brazoria County Clerk's Office is attached hereto marked Exhibit "A" and incorporated herein by reference for all purposes.

10.     At that same time, September 23, 2011, Plaintiff applied for and obtained a mortgage loan from Secure Mortgage Company ("original lender") evidenced by a promissory note in the original principal amount of $167,000.00 ("Note") and secured by a Deed of Trust of even date to Malcolm D. Gibson, as Trustee. A true and correct copy of the Deed of Trust recorded as Document No. 2011039661 of the official real property records of Brazoria County Clerk's office is attached hereto marked Exhibit "B" and incorporated herein by reference for all purposes. The Note and Deed of Trust are hereafter referred to as "Plaintiff's Loan".

11.     Plaintiff timely made all monthly loan payments until early 2016.

12.    Unfortunately, in March 2016, Plaintiff lost his job which caused him to fall behind on his monthly mortgage loan payments.

13.    Upon losing his job, Plaintiff immediately began calling Defendant Flagstar to see how he could resolve the delinquency of his mortgage loan payments.[2]

14.    After numerous phone calls and repeated back and forth with Defendant Flagstar concerning loss mitigation options, on or about September 2016, Plaintiff applied to Defendant Flagstar for a loan modification.

15.    On March 13, 2017, Plaintiff and Defendant Flagstar executed a Home Affordable Modification Agreement wherein Plaintiff's Loan was modified. A true and correct copy of the Home Affordable Modification Agreement recorded as Document No. 2017022222 of the official real property records of the Brazoria County Clerk's office is attached hereto marked Exhibit "C" and incorporated herein by reference for all purposes.

16.    Sadly, on or about August 2017, Hurricane Harvey struck the area and decimated the entire region.

17.    Due to the effects of Hurricane Harvey, on or about September 2017, Plaintiff received notice from Defendant Flagstar informing him that due to Hurricane Harvey he was being provided temporary relief from having to pay any mortgage loan payments until December 2017.

18.    On or about December 2017, Plaintiff attempted to pay his mortgage loan payment online and was unable to do so. The system denied him access to his online account.

19.    Plaintiff immediately began calling Defendant Flagstar to inquire why he was unable to pay his monthly mortgage payments and why he had been denied access to his account.

---

[2] On or about January 15, 2013, the Original Lender, through MERS, assigned Plaintiff's Loan to Defendant Flagstar.

20.    Over the next few months, Plaintiff made numerous calls to Defendant Flagstar and was initially told by representatives that he was being reviewed for a loan modification. However, when he called to follow up on the status of his pending loan modification review, he was shocked to his conscious when a different representative told him that there was no loan modification review pending, but rather that his home was instead being posted for a foreclosure sale.

21.    On or about April 2018, after several more phone calls to Defendant Flagstar, Plaintiff was informed that that the pending foreclosure sale of his home had been canceled and that he was able to re-apply for a loan modification.

22.    At that same time, April 2018, Plaintiff worked vigorously on completing another loan modification application and submitted the application and supplied all of the requested information and documents to Defendant Flagstar.

23.     Several more months passed and Plaintiff maintained regular follow up communications with Defendant Flagstar concerning his pending request for a loan modification. At no point did Plaintiff ever receive any written notice from Defendant Flagstar concerning whether he had been approved or denied for a loan modification, even though he continued to follow up with Defendant Flagstar via phone calls and was repeatedly assured that the loan modification was still being reviewed.

24.    On or about November 2021, Plaintiff was shocked to his conscious and extremely confused when he was served with a citation and a copy of an Original Petition for Forcible Detainer that was filed by the United States Department of Veteran's Affairs ("VA") on October 14, 2021 under Case No. FEV21-107 in the Brazoria County Justice Court, Precinct 3, Place 2. True and correct copies of the citation and Eviction Petition are each attached hereto

marked as Exhibit "D" and incorporated herein by reference for all purposes.

25.    The Eviction Petition avers that Plaintiff's homestead property was sold and purchased by at a foreclosure sale auction that had occurred almost two years prior on February 4, 2020, and that the VA was the successor in interest to the foreclosure sale purchaser. In fact, the Substitute Trustee's Deed avers that the subject property was sold to Flagstar Bank, F.S.B. in the amount t of $186,591.00, which was the highest credit bid received at the auction. A true and correct copy of the recorded Substitute Trustee's Deed recorded as Document No. 2020007827 of the official real property records of the Brazoria County Clerk's office is attached hereto marked Exhibit "E" and incorporated herein by reference for all purposes.

26.    Plaintiff was absolutely flabbergasted as he had been repeatedly told and assured by Defendant Flagstar that his loan was being reviewed for a modification, nor had he been provided with nor received any Notice of Default and Opportunity to Cure Notice, nor the 30-day period to cure the default, as expressly required under paragraph 22 of the Deed of Trust and/or Texas Property Code. Plaintiff was totally ignorant of any pending foreclosure sale and was relying upon the ongoing representations of Defendant Flagstar's representatives that his loan modification was pending review.

27.    Further, Plaintiff never received nor was he ever served with any Notice of Acceleration nor the required Notice of (Substitute) Trustee's Sale nor any notice of any kind concerning the posting of his homestead property for foreclosure sale as expressly required under paragraph 22 of the Deed of Trust and the Texas Property Code. Recall he had been repeatedly calling Defendant Flagstar concerning his pending loan modification since April 2018, and at no point did Defendant Flagstar ever inform him that his home loan was in foreclosure—instead he was repeatedly assured that the loan modification  review was pending.

28.     Plaintiff has not only lost title and ownership of his homestead, but also the significant equity that he had built up in his homestead. The approximate fair market value of Plaintiff's home at the time of the alleged foreclosure sale on February 4, 2020 per Zillow ranges from $312,000 to $363,000, and yet the property allegedly sold at auction to the U.S. Department of Veterans Affairs (VA) and/or Defendant Flagstar Bank for $186,591.00, which is significantly less than sixty percent (60%) of its fair market value. These damages are real and tangible as the difference between the foreclosure sales price and the value of the property at the time of the sale was least $125,409 ($312,000 value at time of sale less $186,591 credit bid at foreclosure sale = $125,409 of lost equity), and ever since the foreclosure sale the value of the property has increased.

29.     In response to the eviction lawsuit, on December 8, 2021, Plaintiff filed his Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction ("First Petition") against both Defendant Flagstar and the VA under Cause No. 115731-CV in the 149th Judicial District Court of Brazoria County District Court. A true and correct copy of the Plaintiff's Petition (without exhibits) is attached hereto marked Exhibit "F" and incorporated herein by reference for all purposes.

30.     On December 16, 2021, the 149th District Court signed and entered a temporary restraining order, wherein the VA was prevented from taking certain actions against Plaintiff, namely the VA was ordered to cease and desist from all efforts to evict Plaintiff from the subject property. The TRO further provided that the Plaintiff must post a cash bond in the amount of $100.00 before the TRO could take effect. On December 16, 2021, Plaintiff posted a cash bond in the amount of $100.00 with the Brazoria County District Clerk.

31.     On February 23, 2022, Defendant Flagstar then filed its Notice of Removal,

whereby the Plaintiff's First Petition was removed to the United States District Court, Southern District of Texas- Galveston Division, under Civil Action No. 3:22-CV-00064 ("Prior Federal case"). On March 2, 2022, Defendant Flagstar also filed a Motion to Dismiss Plaintiff's Petition in the Prior Federal case.

32.     Thereafter, Plaintiff, in agreement with counsel for both Defendant Flagstar and the VA, voluntarily dismissed the VA from the removed Federal case because the VA had agreed to cancel the eviction and transfer title to the property back to Defendant Flagstar because of the issues and legal claims raised by Plaintiff in his First Petition. A true and correct copy of the Deed Without Warranties executed by the VA to Defendant Flagstar dated February 22, 2022, and recorded as instrument no. 2022011480 of the official real property records of the Brazoria County Clerk's office is attached hereto marked Exhibit "G"[3] and incorporated herein by reference for all purposes.

33.     In addition, thereafter Plaintiff's undersigned counsel and Defendant Flagstar's counsel entered into settlement negotiations concerning the Prior Federal case and the prior foreclosure sale.

34.     On or about May 10, 2022, Defendant Flagstar's counsel sent over a proposed settlement offer from Defendant Flagstar, wherein Defendant Flagstar agreed to rescind the February 4, 2020 foreclosure sale and allow Plaintiff to repurchase the property for the total amount of the payoff of the prior mortgage loan, plus accrued interest and costs, for a total repurchase price of $205,868.28 as of June 1, 2022. After consultation with counsel, both Plaintiff and Defendant Flagstar reached agreement on the proposed settlement. A true and

---

[3] Interestingly, the VA never actually held title to the subject property after the February 4, 2020 foreclosure sale— there is no other deed filed of record in the Brazoria County Clerk's office from Flagstar Bank to the VA that is recorded between February 4, 2020 and February 22, 2022, evidencing any conveyance of title to the VA.

correct copy of the proposed and accepted settlement offer is attached hereto marked Exhibit "H" and incorporated herein by reference for all purposes.

35.     Over the course of the next several weeks, Plaintiff's counsel and Defendant Flagstar's counsel frequently communicated about finalizing the settlement and preparing a form of settlement agreement for the parties to sign. By email dated May 25, 2022, Defendant Flagstar's counsel then agreed to draft the settlement agreement. True and correct copies of the May 25, 2022 emails between counsel to evidence the same are each attached hereto marked Exhibit "I" and incorporated herein by reference for all purposes.

36.     By emails dated June 7 and 8, 2022, Defendant Flagstar's counsel sent Plaintiff's counsel the proposed settlement agreement. However, in the email, Defendant Flagstar's counsel specifically asked that Plaintiff not sign the agreement until Defendant Flagstar provided approval of the form, even though the parties had already reached agreement on the specific settlement terms and Plaintiff was ready, willing, able to sign and perform under the settlement agreement. By email dated June 8, 2022, Plaintiff's counsel acknowledged receipt and informed Defendant Flagstar's counsel that the settlement agreement would be sent to the Plaintiff to review but that Plaintiff would be instructed not to actually sign it until Defendant Flagstar approved it, even though Plaintiff had already agreed to the proposed terms and accepted those terms and was ready to sign. True and correct copies of the June 7-8, 2022 emails are attached hereto marked Exhibit "J" and incorporated herein by reference for all purposes.

37.     Throughout March 2022 until the end of May 2022, and in light of the ongoing settlement negotiations and the settlement offer that had been offered and accepted by Plaintiff, Plaintiff filed three (3) motions to extend time to respond to Defendant Flagstar's pending motion to dismiss the Prior Federal case, each of which were unopposed by Defendant Flagstar.

Plaintiff and his counsel were trying to stave off having to incur unnecessary, additional attorney's fees and costs in responding to the motion to dismiss because settlement negotiations were ongoing during this time period and by early June 2022 an agreed settlement had been reached and the settlement had been consummated. When Plaintiff accepted the May 25, 2022 settlement offer (Exhibit "H"), the hope was that the final settlement could be completed before the Plaintiff's deadline to respond to the pending motion to dismiss.

38.     Unfortunately, and even though the parties had previously informed the Federal Court that the parties were in ongoing settlement negotiations, on June 13, 2022, the Federal Court, *sua sponte*, entered an Order granting Flagstar's motion to dismiss and dismissed the Prior Federal case, WITHOUT PREJUDICE. (emphasis added). A true and correct copy of the Order [Dkt. 22] dismissing the Federal case, without prejudice, is attached hereto marked Exhibit "K" and incorporated herein by reference for all purposes.

39.     To Plaintiff's absolute shock and dismay, on June 15, 2022, Defendant Flagstar's counsel informed Plaintiff's counsel that in light of the Order of dismissal Defendant Flagstar's settlement offer was withdrawn. A true and correct copy of the June 15, 2022 email is attached hereto marked Exhibit "L" and incorporated herein by reference for all purposes.

40.     Plaintiff was shocked to his conscious and became angry and upset because he had already accepted the May 15, 2022 settlement offer, and had already agreed to execute the proposed settlement agreement, and was prepared to fully perform under the settlement agreement and repurchase the property, but had not signed the settlement agreement only because his counsel was asked by Defendant's Flagstar's counsel not to have him sign until Defendant Flagstar had approved the form—even though Defendant Flagstar's counsel had already provided the offer and drafted the Settlement Agreement based upon the Plaintiff's

agreement to accept the offer and Plaintiff had already accepted the settlement terms—it was just a matter of formalizing the agreement.

41.    By email dated July 6, 2022, Plaintiff's counsel notified Defendant Flagstar's counsel that Plaintiff still wanted to proceed with the settlement and was ready to tender the repurchase price as previously agreed. A true and correct copy of the July 6, 2022 email is attached hereto marked Exhibit "M" and incorporated herein by reference for all purposes.

42.    By emails dated July 25 and 26, 2022, Plaintiff's counsel continued to pursue the settlement on behalf of Plaintiff; however, Defendant Flagstar's counsel advised Plaintiff's counsel that Defendant Flagstar would not agree to pursue the settlement. True and correct copies of the July 25-26, 2022 emails exchanged between counsel are attached hereto marked Exhibit "N" and incorporated herein by reference for all purposes.

43.    Subsequently, and over the course of the next several months, Plaintiff received several numerous emails and notices from Defendant Flagstar wherein Defendant Flagstar was attempting to collect the debt evidenced by the mortgage loan--the same mortgage loan that had allegedly been fully extinguished and paid in full through the February 2020 foreclosure sale. In addition, these emails and notices also stated that Plaintiff could apply for homeowner assistance through a special program created for Texas homeowners. However, these emails also stated that Plaintiff could not reply or respond to the emails since they were sent from an unmonitored address. In fact, Plaintiff has continued to receive these emails as recently as March 29, 2023, which was AFTER Plaintiff had filed the State Court action that was then removed to this Court. True and correct copies of emails dated March 2, 2023 and March 29, 2023 and received by Plaintiff from Defendant Flagstar are attached hereto marked Exhibit "O" and incorporated herein by reference for all purposes.

44.    Each of these emails each clearly state that:

"**FAIR DEBT COLLECTION PRACTICES**. THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT. ALL INFORMATION OBTAINED RELATING TO THIS LETTER WILL BE USED FOR THAT PURPOSE. TO THE EXTENT YOUR ORIGINAL OBLIGATION WAS DISCHARGED, OR IS SUBJECT TO AN AUTOMATIC STAY OF BANKRRUPTCY UNDER TITLE 11 OF THE UNITED STATES CODE, THIS STATEMENT IS FOR CIMPLIANCE AND/OR INFORMATINOAL PURPSOES ONLY AND DOES NOT CONSTITUTE AN ATTEMTP TO COLLECT A DEBT OR IMPOSE PERSONAL LIABILITY FOR SUCH OBLIGATION. HOWEVER, THE CREDITOR RETAINS RIGHTS UNDER ITS SECURITY INSTRUMENT, INCUIDNG THE RIGHT TO FORECLOSE ITS LIEN, AS PERMITTED BY GOVERNING LAW." (emphasis added).

45.    Plaintiff was once again shocked to his conscious and extremely confused because, on the one hand Defendant Flagstar purports to have completed a non-judicial foreclosure sale of the mortgage loan back on February 4, 2020, and then subsequently breached and reneged on the Settlement Agreement that it offered to Plaintiff and that he had accepted, which Settlement Agreement had been reached concerning the Prior Federal case, wherein Defendant Flagstar had agreed to sell the property back to Plaintiff for the full payoff amount of the loan with accrued interest through the date of settlement, which was more than 2 years after the February 4, 2020 foreclosure sale, and yet on the other hand several months after dismissal of the prior Federal case Defendant Flagstar is now sending "debt collection" notices to the Plaintiff concerning the subject loan which included homeowner assistance options for the loan that was allegedly fully extinguished and satisfied through the foreclosure sale three (3) years earlier, and these notices specifically state that Defendant Flagstar is a debt collector attempting to collect such debt.

46.    Then, to add insult to injury, on or about March 21, 2023, Plaintiff found a written notice posted on the front door of his homestead property wherein an agent or employee of Defendant Fay by the name of Joel Rankin advised Plaintiff that his property has been acquired via foreclosure to call Mr. Rankin, *"within 72 hours or we will assume this property is vacant*

***and/or abandoned and rekey.***" A true and correct copy of the written notice posted by Defendant Fay is attached hereto marked Exhibit "P" and incorporated herein by reference for all purposes.

47.     Plaintiff's undersigned counsel then immediately called and spoke to Mr. Rankin, who confirmed that he was an agent of Defendant Fay (not Defendant Flagstar) and that this notice was a routine notice that he posts as part of the inspection and eviction services he provides to Defendant Fay. Plaintiff's counsel also asked Mr. Rankin to provide a copy of any deed, agreement, or other written evidence that title to the subject property had been transferred from Defendant Flagstar to Defendant Fay, or if he was even aware that Defendant Flagstar claims to be the putative owner of the property based upon the Substitute Trustee's Deed, to which he responded that he did not work for Flagstar, did not know anything about Flagstar's claimed ownership of the property, and only posted the notice on behalf of Defendant Fay.

48.     Once again, the real property records of Brazoria County do not reflect any deed, assignment, or other instrument which shows any transfer of the subject property from Defendant Flagstar to Defendant Fay, and yet Fay posted an eviction notice.

**V.**

**COUNT ONE –**
**TRESPASS TO TRY TITLE TO REAL PROPERTY**

49.     Paragraphs 1-49 are incorporated herein by reference.

50.     A trespass to try title action is the exclusive method to adjudicate rival claims of title to real property. *Vernon v. Perrien*, 390 S.W.3d 47, 54 (Tex. App. - El Paso 2012, pet denied.).

51.     In a trespass-to-try-title action, the plaintiff is required to prove his or her title by proving (1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a

superior title to that of the defendant out of a common source; (3) title by limitations; or (4) prior possession which has not been abandoned. *Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 728 (Tex. App.--Eastland 2012, no pet.).

52.    As evidenced by the foregoing factual allegations, Plaintiff obtained title through a regular chain of conveyances from the sovereign to Plaintiff through the General Warranty Deed With Vendor's Lien (Exhibit "A") and the Plaintiff's claim of title is superior to that of Defendant Flagstar or the VA.

53.    Further, because of the numerous defects in the processing of the alleged foreclosure sale of February 4, 2020, namely that Defendant Flagstar wholly failed to provide Plaintiff with any of the express, required written notices under the Deed of Trust and Texas Property Code before exercising the power of sale as described herein, and proceeded to complete a foreclosure sale without ever having reviewed or considered Plaintiff's complete loss mitigation application, and the sale price paid/bid at the foreclosure sale was grossly inadequate and has resulted in actual damages to Plaintiff in the loss of his equity of at least $125,409, which is the difference between the foreclosure sales price (total debt bid by Defendant Flagstar and the fair market value of the property at the time of the sale), the subject foreclosure sale is wrongful and Defendant Flagstar's claim of title through the Substitute Trustee's Deed (Exhibit "E"), is void, *ab initio*, and of no force or effect, and certainly is inferior to Plaintiff's claim of title.

54.    Therefore, pursuant to TEX. PROP. CODE §22.001 et seq. and TRCP Rule 783 et seq., Plaintiff hereby seeks a judgment from this Court declaring that Plaintiff is the lawfully vested fee simple title owner of the subject property under a trespass to try title to real property, and that Defendant Flagstar's Substitute Trustee's Deed (Exhibit "E") is void, *ab initio*, and of

no force of effect whatsoever, and that Defendant Flagstar be ordered to fully refund the foreclosure sale purchase proceeds in the amount of $186,591.00 that it/they credit bid to the substitute trustee and declare that Defendant Flagstar and/or Fay is/are fully divested of any right, title, claim, or interest in the subject Property, and that Defendants Flagstar and Fay have no claim or right of title to the subject Property other than as a lien holder under the Deed of Trust, and for an award of all actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

55.     All conditions precedent for this Court to enter a judgment for trespass to try title as requested herein have occurred or have been met.

## VI.

### COUNT TWO -
### WRONGFUL FORECLOSURE AND
### DECLARATORY JUDGMENT TO VOID SUBSITUTE TRUSTEE'S DEED

56.     Paragraphs 1-55 are incorporated herein by reference.

57.     The acts, conduct and/or omissions of Defendant Flagstar and/or its various agents, representatives, or employees as described herein, *supra*, of purporting to complete a foreclosure sale of Plaintiff's homestead property and of wholly failing to provide any notice of any kind whatsoever to Plaintiff prior to the foreclosure sale, and of proceeding to accelerate the loan and complete a foreclosure sale when Plaintiff had submitted a complete loss mitigation application two years prior to the sale, and which application was received and accepted more than 37 days prior to any scheduled foreclosure sale, and of repeatedly assuring Plaintiff that his application was under review when in fact it was never reviewed, each constitutes an act of wrongful foreclosure based upon a material defect in the foreclosure process and a failure of condition precedent in violation of the express terms of the Deed of Trust and/or Texas Property

Code, and is the proximate cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

58.    Moreover, the foreclosure sales price set forth in the Substitute Trustee's Deed is grossly inadequate given that the fair market value of the Plaintiff's property at the time of the sale ranges from $312,000 to $363,000, and the property sold for less than sixty percent (60%) of its fair market value, and Plaintiff has suffered and incurred damages through the loss of his equity in the subject property of at least $125,409, which is within the minimum jurisdictional limits of this Court.

59.    Therefore, pursuant to the Texas Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE §37.001 et seq., Plaintiff hereby seeks a declaratory judgment from this Court declaring that the Substitute Trustee's Deed (Exhibit "E") is void, *ab initio*, and of no force or effect whatsoever, and that Defendant Flagstar be ordered to fully rescind the foreclosure sale and deed the property back to Plaintiff, and declare that Defendant Flagstar and/or Fay are each fully divested of any legal title and ownership of the subject Property, and that Defendant Flagstar and/or Fay has no claim or right of title to the subject Property other than as a lien holder under the Deed of Trust, and further declare that Plaintiff is returned to the status quo that existed prior to the February 4, 2020 foreclosure sale, and is fully revested with fee simple title to the subject property, subject to the Deed of Trust lien and the note secured thereby, and all other valid liens or encumbrances that existed prior to the February 4, 2020 foreclosure sale, and award Plaintiff all actual damages sustained and incurred in excess of the minimum jurisdictional limits of this Court.

60.    As each of the acts, conduct and/or omissions of Defendant Flagstar and/or its various agents, representatives or employees which constitute a wrongful foreclosure of the

Plaintiff's homestead property as described herein were committed intentionally, knowingly, and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to and hereby seek an award of exemplary damages against said defendants in excess of the minimum jurisdictional limits of this Court.

**VII.**

**COUNT THREE –
BREACH OF CONTRACT AND FAILURE OF CONDITION PRECEDENT**

61.    Paragraphs 1-60 are incorporated herein by reference.

62.    The acts, conduct or omissions of the Defendant Flagstar as described herein, *supra*, also constitute a material breach of the Deed of Trust contract and a failure of condition precedent as to its acceleration of Plaintiff's loan and the alleged foreclosure sale of Plaintiff's homestead property, which material breach is the proximate cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

63.    As alleged herein, *supra*, Defendant Flagstar never provided Plaintiff with any Notice of Default and Opportunity to Cure notice as expressly required by the Deed of Trust and/or Texas Property Code, which acts, conduct, and/or omissions also constitute a material breach of contract and failure of condition precedent that must occur before the power of sale provisions in the Deed of Trust can be exercised, and is a producing cause of the actual damages sustained and incurred by Plaintiff and which are calculated through the loss of his equity in the subject property of at least $125,409, which is in excess of the minimum jurisdictional limits of this court.

64.    Specifically, Defendant Flagstar breached paragraph 22 of the Deed of Trust for failure to provide Plaintiff with the required notice, which provides in pertinent part as follows:

"22.    *Acceleration; Remedies*. **Lender shall give notice to Borrower prior to**

**acceleration following Borrower's breach of any covenant or agreement in this Security Agreement (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property**. The notice shall further inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale…" (emphasis added).

65.     Defendant Flagstar's acts, conduct, or omissions as described herein, supra, also constitute a separate breach of paragraph 22 of the Deed of Trust because the Defendant and/or its substitute trustee also failed to ever provide Plaintiff with any notice of acceleration, nor any notice of trustee's or substitute trustee's sale, and which breach is a producing cause of the actual damages sustained and incurred by Plaintiff and which are calculated through the loss of his equity in the subject property of at least $125,409, which is in excess of the minimum jurisdictional limits of this court. Paragraph 22 of the Deed of Trust further provides in pertinent part as follows:

**"...If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place, and terms of sale by posting and filing the notice at least 21 days prior to the sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner provided by Applicable Law**…" (emphasis added).

66.     In addition, Defendant Flagstar also breached paragraph 19 of the Deed of Trust by failing to provide Plaintiff with any opportunity to reinstate the loan after acceleration, which provides in pertinent part as follows:

"19.     *Borrower's Right to Reinstate After Acceleration*.  If Borrower meets certain conditions, **Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; (c) entry of a judgment enforcing this Security Instrument…**" (emphasis added).

## VIII.

## <u>COUNT FOUR -</u>
## <u>VIOLATIONS OF THE TEXAS DEBT COLLECTION PRACTICES ACT</u>

67.    Paragraphs 1-66 are incorporated herein by reference.

68.    The acts, conduct and/or omissions of Defendant Flagstar, who at all material times was acting in its capacity as a "*third-party debt collector attempting to collect a debt due another that was in default,*" of failing, neglecting, or refusing to ever provide Plaintiff with the required Notice of Default and Intent to Accelerate notice specifically required under the Deed of Trust and/or TEX. PROP. CODE § 51.002(d) as alleged herein, or of the amount required to cure the default of the loan, and by failing, neglecting, or refusing to ever provide Plaintiff with any written reasons for denial of his pending, complete loan modification application, and of also failing to provide Plaintiff with any notice of acceleration of the loan or any notice of the date, time and location of the foreclosure sale at least 21 days prior to the sale date, and instead proceeding to accelerate the loan and post his homestead property for foreclosure sale, each constitute the intentional and/or knowing misrepresentation of the character, amount, or extent of the debt to be collected in violation of the Texas Debt Collection Act, TEX. FIN. CODE §392.001 et seq., and is a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

69.    Further, the acts, conduct or omissions of Defendant Flagstar as described herein, *supra*, of sending harassing and intimidating debt collection written emails and notices to the Plaintiff more than three (3) years after the alleged foreclosure sale, wherein Defendant Flagstar provides information about homeowner's assistance programs available concerning payment of the debt evidenced by the note (*see* Exhibit "N")—the same debt and note that was allegedly

fully extinguished and paid in full through the alleged foreclosure sale, each also constitute separate and distinct violations of the Texas Debt Collection Act and are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

70.    Specifically, the acts, conduct or omissions of Defendant Flagstar as described herein, *supra*, each constitute violations of the following provisions of the Texas Debt Collection Act: §392.301(a)(7)-threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings; and §392.301(a)(8)-threatening to take an action prohibited by law; and §392.304(a)(8) – misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding; and §392.304(a)(19) – using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer, and which violations are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

71.    Moreover, the acts, conduct, or omissions of Defendant Fay as described herein, *supra*, of posting a written notice on Plaintiff's door and threatening to evict Plaintiff from his homestead property, when Defendant Fay has no discernable interest in the subject property or loan as there is no evidence of any conveyance of the property to Fay from Flagstar found in the Brazoria County real property records, nor any evidence of any written agreement between Fay and Flagstar concerning the subject property or loan, also constitutes a violation of the Texas Debt Collection Act, and such notice is a threat to take an action prohibited by law and a false representation or deceptive means to collect a debt or obtain information concerning a consumer, and is a producing cause of the actual damages sustained and incurred by Plaintiff in excess of

the minimum jurisdictional limits of this Court.

72.    As each of the acts, conduct and/or omissions of Defendants Flagstar and Fay as described herein, *supra*, that constitute violations of the Texas Debt Collection Practices Act and were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to and hereby seeks an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

**IX.**

**COUNT FIVE –
VIOLATIONS OF RESPA AND REGULATION X**

73.    Paragraphs 1-72 are incorporated herein by reference.

74.    The acts, conduct and/or omissions of Defendant Flagstar as described herein, *supra*, which at all material times hereto was acting in its alleged capacity as "mortgage servicer" of Plaintiff's mortgage loan, also constitute violations of RESPA and Regulation X of the Code of Federal Regulations established by the Consumer Financial Protection Bureau, 12 C.F.R. §1024.41 et seq., which became effective as of January 10, 2014, because Defendant Flagstar committed violations of this statute and those statutory violations are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

75.    Pursuant the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605(f), Plaintiff has a private right of action providing for remedies for the claimed breaches of Regulation X, including actual damages, costs, statutory damages and attorney's fees.

76.    Plaintiff's mortgage loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. §1026.41(e)(4), and Defendant Flagstar Loan is subject to these regulations and does not qualify for the exception for a "small servicer" or "qualified lender" as defined in

12 C.F.R. §617.700.

77.    Specifically, Defendant Flagstar's acts, conduct and/or omissions of failing, neglecting or refusing to provide Plaintiff with any written response or assessment of his complete loan modification application that was submitted for review in April 2018, and of repeatedly reassuring Plaintiff that his application was being reviewed and that a written response would be forthcoming, and then wholly failing to provide any response of any kind, and instead engaged in "dual-tracking" and proceeded to accelerate the loan and post Plaintiff's homestead property for foreclosure sale each constitute violations of RESPA and Regulation X and are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

78.    As each of the acts, conduct and/or omissions of Defendant SLS as described herein that constitute violations of RESPA and Regulation X and were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to and hereby seeks an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

**X.**

**COUNT SIX –
NEGLIGENT MISREPRESENTATION**

79.    Paragraphs 1-78 are incorporated herein by reference..

80.    The elements of a cause of action for negligent misrepresentation are (1) the representation is made by a defendant in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant does not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably

relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991).

81.     As set forth herein, *supra*, Defendant Flagstar was engaged in the ordinary course of their businesses related to Plaintiff's Loan and has or claims a pecuniary interest in the Loan and the property secured by the loan, and failed to provide Plaintiff with any information about what he allegedly owed to cure the default of his loan, and failed to follow the express terms of the Deed of Trust and Texas Property Code prior to accelerating Plaintiff's Loan and purporting to complete a foreclosure sale of his homestead property, and repeatedly assured Plaintiff that his pending loan modification application was under review, but then never provided any written notice that any loan modification offer had been offered nor denied, which application Plaintiff had submitted in April 2018 and had been continuously calling and following up on and was repeatedly assured that it was being reviewed, and at no point did any representative inform Plaintiff that his home was in foreclosure nor that it had actually been posted for foreclosure, and which negligent misrepresentations Plaintiff justifiably relied upon to his detriment, and are the producing cause of the actual damages sustained and incurred by Plaintiff, and which excess of the minimum jurisdictional limits of this Court.

82.     Moreover, Defendant Flagstar was engaged in the ordinary course of its business related to Plaintiff's Loan and the subject property when its counsel tendered the settlement offer to Plaintiff's counsel on May 10, 2022, and Plaintiff's counsel then notified Flagstar's counsel that Plaintiff agreed to accept the settlement offer, and thereafter Flagstar's counsel drafted and sent the proposed settlement agreement to Plaintiff's counsel and Flagstar's counsel asked that Plaintiff not sign the settlement agreement until Flagstar had approved it, even though Plaintiff and Flagstar had already reached agreement based upon the accepted settlement offer, and

Defendant Flagstar, through its counsel, negligently misrepresented to Plaintiff's counsel that Plaintiff not sign the agreement until Flagstar had approved it, and then instead of provide Flagstar's approval of the settlement agreement informed Plaintiff's counsel that the settlement agreement was being withdrawn, only after Plaintiff had justifiably relied upon those negligent misrepresentations to his detriment and was ready, willing, and able to sign the settlement agreement and fully perform under the terms of that agreement, which are also a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

83.    Moreover, the acts, conduct, or omissions of Defendant Flagstar as alleged herein, *supra*, of sending written emails and notices to the Plaintiff three (3) years after the foreclosure sale, wherein Defendant Flagstar is expressly acting as a debt collector attempting to collect the debt that was already extinguished and satisfied, and which notices reference options to pay such debt, even though the debt had been fully satisfied, paid, and extinguished through the alleged February 4, 2020 foreclosure sale, also constitute negligent misrepresentations that Plaintiff justifiably relied upon to his detriment, and are the producing cause of the actual damages sustained and incurred by Plaintiff, and which excess of the minimum jurisdictional limits of this Court.

84.    Further, the acts, conduct, or omissions of Defendant Fay as alleged herein, *supra*, of posting a notice to vacate the property on Plaintiff's door and threatening to evict Plaintiff at a time when Defendant Fay had no discernable interest in the subject property and there is no evidence that Defendant Fay was ever deeded, assigned, transferred, or conveyed any interest in the property, also constitute negligent misrepresentations that Plaintiff justifiably relied upon to his detriment, and are the producing cause of the actual damages sustained and incurred by

Plaintiff, and which excess of the minimum jurisdictional limits of this Court.

## XI.

## <u>COUNT SEVEN –</u>
## <u>PROMISSORY ESTOPPEL</u>

85.     Paragraphs 1-84 are incorporated herein by reference.

86.     The acts, conduct, or omissions of Defendant Flagstar and/or its employees, agents, or attorneys as described herein, *supra*, also constitute Promissory Estoppel and are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

87.     The elements of a cause of action for promissory estoppel are as follows: (1) the defendant made a promise to the plaintiff; (2) the plaintiff reasonably and substantially relied upon the promise to its detriment; (3) the plaintiff's reliance was foreseeable by the defendant, and (4) injustice can be avoided only by enforcing the defendant's promise. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex.2002); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983); *BP Am. Prod. v. Zaffirini*, 419 S.W.3d 485, 507 (Tex.App.-San Antonio 2013, pet. denied); *Collins v. Walker*, 341 S.W.3d 570, 573-74 (Tex.App.-Houston [14th Dist.] 2011, no pet.).

88.     As alleged herein, *supra*, Defendant Flagstar and Plaintiff reached an agreement when Plaintiff accepted the settlement offer made by Defendant Flagstar's counsel to Plaintiff's counsel in the May 10, 2022 email (*see* Exhibit "G"), and Defendant Flagstar's counsel then promised to draft and provided the settlement agreement for the parties to execute by email dated May 25, 2022 (*see* Exhibit "F"), and when Defendant Flagstar's counsel sent Plaintiff's counsel the settlement agreement to execute, but asked that Plaintiff not sign the same until Flagstar had approved it, which meeting of the minds had already occurred when the Settlement Agreement

was received, and was received at a time when Plaintiff was ready, willing, and able to sign and perform under the accepted settlement promise, Plaintiff then detrimentally and justifiably relied upon Defendant Flagstar's promise to consummate the settlement once Flagstar had approved the settlement agreement and did not sign it only because of Defendant Flagstar's request, which detrimental reliance was clearly foreseeable by the defendant, and injustice can only be avoided by enforcing the terms of the promise made and accepted under the settlement offer.

89.    Accordingly, Plaintiff hereby seeks a judgment from this Court declaring that Defendant Flagstar's promise set forth in the May 10, 2022 settlement offer, which offer was accepted by Plaintiff, and was known to have already been accepted by Defendant Flagstar's counsel when the written Settlement Agreement was provided by Flagstar's counsel to Plaintiff's counsel on May 25, 2023, be fully enforced to avoid a manifest injustice as to Plaintiff's right to repurchase the subject property from Defendant Flagstar under the terms of its promise.

## XII.

## <u>COUNT EIGHT -</u><br><u>EXEMPLARY DAMAGES</u>

90.    Paragraphs 1-89 are incorporated herein by reference.

91.    Plaintiff would further show that the various acts, conduct and/or omissions of each of the Defendants complained of herein were committed knowingly, willfully, intentionally, and with actual awareness, and with the specific and pre-determined intention of enriching said Defendants at the expense of Plaintiff. In order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages as provided by Section 41.003(a)(1) of the Texas Civil Practice and Remedies Code.

## XIII.

## COUNT NINE -
## ATTORNEY'S FEES

92.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 37.001 et seq. of the Texas Civil Practices and Remedies Code, (b) Section 392.001 et seq. of the Texas Finance Code, and (c) common law.

## XIV.

## JURY DEMAND

93.     Plaintiff previously requested a jury when he filed the State Court action and reasserts his jury demand herein.

## XV.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Blake Edward Hasty, respectfully prays that the Defendants be cited to appear and answer herein, and that upon the final trial of this cause, Plaintiff be granted:

a.      Judgment in favor of Plaintiff and against Defendant Flagstar for trespass to try title as described herein, and for all economic and actual damages requested herein in an amount in excess of the minimum jurisdictional limits of the Court; and,

b.      Judgment in favor of Plaintiff and against Defendant Flagstar for wrongful foreclosure and setting aside the Substitute Trustee's Deed as void, *ab initio*, and restoring Plaintiff with fee simple title and ownership of the subject property and further declaring that

Defendant Flagstar's is divested of any ownership interest in the subject property and that its interest in the real property is that of a lien holder, and for all economic and actual damages requested herein in an amount in excess of the minimum jurisdictional limits of the Court; and,

c.      Judgment in favor of Plaintiff and against the Defendant Flagstar for breach of contract and failure of condition precedent concerning the numerous breaches of the deed of trust as described herein, and for all economic and actual damages requested herein in an amount in excess of the minimum jurisdictional limits of the Court; and,

d.      Judgment in favor of Plaintiff and against Defendant Flagstar for violations of RESPA and Regulation X of the Code of Federal Regulations as described herein, and for all economic and actual damages requested herein in an amount in excess of the minimum jurisdictional limits of the Court; and,

e.      Judgment in favor of Plaintiff and against Defendants Flagstar and Fay, jointly and/or severally, for violations of the Texas Debt Collection Act as described herein, and for all economic and actual damages requested herein in an amount in excess of the minimum jurisdictional limits of the Court; and,

f.      Judgment in favor of Plaintiff and against Defendants Flagstar and Fay, jointly or severally, for negligent misrepresentation as described herein, and for all economic and actual damages requested herein in an amount in excess of the minimum jurisdictional limits of the Court; and,

g.      Judgment in favor of Plaintiff and against Defendant Flagstar for promissory estoppel as described herein, and for all economic and actual damages requested herein in an amount in excess of the minimum jurisdictional limits of the Court; and,

h.      Judgment in favor of Plaintiff and against the Defendants Flagstar and Fay, jointly

and/or severally, for exemplary damages pursuant to Section 41.003(a)(l) of the Texas Civil Practice and Remedies Code as described herein in an amount in excess of the minimum jurisdictional limits of the Court; and,

      i.    Judgment in favor of Plaintiff and against Defendants Flagstar and Fay, jointly and/or severally, for all attorney's fees and costs of court incurred, including pre-judgment and post-judgment interest at the maximum rate allowed by law, and for such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

          Respectfully submitted,

          */s/ John G. Helstowski*

          John G. Helstowski
          Texas State Bar No. 24078653; S.D. Bar No. 2799780
          5209 Heritage Avenue, Suite 510
          Colleyville, Texas 76034
          Telephone: (817) 382-3125
          Facsimile: (817) 382-1799
          Email: jgh@jghfirm.com
          Lead counsel for Plaintiff Blake Edward Hasty

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 10, 2023, a true and correct copy of the foregoing *Plaintiff's Amended Complaint* was filed and served upon all parties and counsel of record via the Court's ECF notification system and the Federal Rules of Civil Procedure.

          */s/ John G. Helstowski*

          John G. Helstowski
          Lead counsel for Plaintiff